# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ANDRÉS FELIPE C. C.,

        Petitioner,

v.

TODD BLANCHE, *Acting Attorney General*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director of Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

        Respondents.

Case No. 26-cv-3220 (LMP/SGE)

**ORDER GRANTING HABEAS PETITION**

Kira Aakre Kelley, **Climate Defense Project, Minneapolis, MN**, for Petitioner.

Worthington Phillips, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Andrés Felipe C. C.[1] brings a petition for a writ of habeas corpus challenging the lawfulness of his arrest and immigration detention. For the following reasons, the petition is granted, and the Court orders Respondents (the "Government") to provide Andrés a bond redetermination hearing within seven days of the date of this Order.

---

[1]    The Court uses Petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any non-governmental parties in immigration cases. No disrespect is intended in doing so.

## BACKGROUND

Andrés is a native and citizen of Colombia who, along with his wife and minor child, entered the United States on May 16, 2024. *See* ECF No. 1 ¶ 11; ECF No. 6-5 at 2. After surrendering himself to immigration authorities at the United States-Mexico border, he was arrested and issued a Notice to Appear charging him with removability under the Immigration and Nationality Act for being "present in the United States without being admitted or paroled." *See* ECF No. 1 ¶ 12; ECF No. 6-1 at 1. Andrés subsequently was conditionally "released on [his] own recognizance" into the United States "[i]n accordance with section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act." ECF No. 6-6. Andrés alleges he later filed an asylum claim, which remains pending, and obtained employment authorization. ECF No. 1 ¶ 13; *see* ECF No. 6-5 at 3. He and his family now reside in St. Paul, Minnesota. ECF No. 1 ¶ 14.

On July 1, 2026, Andrés was arrested by the Fridley Police Department and charged with driving while intoxicated. ECF No. 6-5 at 3. He was detained at the Anoka County Jail and later ordered released on a $12,000 bond. *Id.* Other than that charge, which remains pending, Andrés has no other criminal history. *See id.* The same day, the Department of Homeland Security ("DHS") lodged an immigration detainer with the Anoka County Jail and issued an I-200 warrant for Andrés's arrest after confirming through a biometrics check that Andrés "lacks immigration status or notwithstanding such status is removable under U.S. immigration law." ECF No. 6-3 at 1; ECF No. 6-4. The I-200 warrant was issued "pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act." ECF No. 6-4.

2

On July 6, 2026, Andrés was released from the Anoka County Jail into the custody of Immigration and Customs Enforcement ("ICE") pursuant to the immigration detainer and I-200 warrant. *See* ECF No. 6-5 at 2. ICE served the I-200 warrant on Andrés that day, ECF No. 6-4, and issued a Notice of Custody Determination stating that, "pending a final administrative determination in [his] case," he would remain detained by DHS "[p]ursuant to the authority contained in section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act." ECF No. 6-2. Andrés acknowledged receipt of the initial custody determination and requested review by an immigration judge. *Id.* There is no indication in the record that Andrés's initial custody determination has been reviewed by an immigration judge, and he remains in ICE custody at the Sherburne County Jail in Elk River, Minnesota. *See* ECF No. 1 ¶ 16.

Andrés filed a petition for a writ of habeas corpus on July 9, 2026, alleging that his continued immigration detention violates his Fifth Amendment right to procedural due process. He challenges ICE's retroactive classification of his detention as authorized under 8 U.S.C. § 1225(b)(2) "so as to justify detention without bond" because the I-200 warrant identifies only 8 U.S.C. § 1226 as the basis for his arrest. *Id.* ¶¶ 39–49. Andrés also alleges that his detention violates his Fourth Amendment right to be free from unreasonable seizure because the I-200 warrant was served after he was taken into ICE custody. *See id.* ¶¶ 50–54. Andrés seeks either his immediate release from ICE custody or a bond redetermination hearing before an immigration judge. *Id.* at 23–24.

**ANALYSIS**

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Starting with Andrés's Fourth Amendment claim, Andrés alleges that his arrest was unlawful because the I-200 warrant was served on him only after he was arrested and transferred into ICE custody, not "when he was detained." ECF No. 1 ¶¶ 50–54. But although the I-200 warrant was served on July 6, 2026, after Andrés was transferred into ICE custody, it was issued on July 1, 2026, five days before. ECF No. 6-4. And Section 1226(a) requires only that an I-200 warrant be *issued*, not *served*, prior to an arrest. *See Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), ECF No. 14 at 3–6 (D. Minn. Feb. 3, 2026); *see also Joaquin Q. L. v. Bondi*, No. 26-cv-233 (LMP/DTS), 2026 WL 161333, at *2 (D. Minn. Jan. 21, 2026) (citation omitted) ("[I]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)."). The Court therefore concludes that Andrés's arrest was lawful.

That leaves Andrés's Fifth Amendment due process claim. It is well established that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). And a person's "interest in being free

from physical detention by [the] government" is "the most elemental of liberty interests" protected by the Due Process Clause. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "The core of due process is the right to notice and a meaningful opportunity to be heard" regarding the deprivation of a protected liberty interest by the government. *LaChance v. Erickson*, 522 U.S. 262, 266 (8th Cir. 1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). An "elementary and fundamental requirement of due process" is that notice be "reasonably calculated" to inform a person of the availability of "an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Government primarily argues that Andrés is properly detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2) and, therefore, is not entitled to a bond hearing in accordance with the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). ECF No. 5 at 3–4. Had immigration authorities invoked their authority to detain Andrés under Section 1225(b)(2) when he entered the United States in May 2024, the Court agrees that Andrés would be subject to mandatory detention under that statute because he is an "unadmitted alien[] already present inside the United States." *Avila*, 170 F.4th at 1136. Indeed, had ICE invoked Section 1225(b)(2) when it took Andrés into custody on July 6, 2026, ICE certainly would have the statutory authority to detain him without a bond hearing, in accordance with *Avila*. *See id.* at 1136–38. But that is not what happened here.

Begin with Andrés's apprehension at the United States-Mexico border in May 2024. Section 1225(b)(2) provides that "if the examining immigration officer determines that an

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings.  8 U.S.C. § 1225(b)(2).  The Government did not detain Andrés under Section 1225(b)(2) at that time, however, but instead released him into the United States "on [his] own recognizance."  ECF No. 6-6.  Release on recognizance is "a form of 'conditional parole' from detention upon a charge of removability, *authorized under section 1226*."  *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) (emphasis added) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)); *see J. U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025) ("[R]elease on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention."); *see also* 8 U.S.C. § 1226(a)(2)(B) (providing that the Attorney General may "release" a noncitizen on "conditional parole").  Indeed, Andrés's Order for Release on Recognizance states that it was issued "[i]n accordance with *section 236* [8 U.S.C. § 1226] of the Immigration and Nationality Act."  ECF No. 6-6 (emphasis added).

Move ahead to July 6, 2026, when ICE took Andrés into custody pursuant to an immigration detainer and an I-200 warrant.  The I-200 warrant unambiguously states that it was issued "pursuant to *section 236* [8 U.S.C. § 1226] of the Immigration and Nationality Act."  ECF No. 6-4 (emphasis added).  Likewise, the Notice of Custody Determination that was issued at the same time states that Andrés would be detained "[p]ursuant to the authority contained in *section 236* [8 U.S.C. § 1226] of the Immigration and Nationality Act" until a "final administrative determination" is made as to whether Andrés will be removed from the United States.  ECF No. 6-2 (emphasis added).  Again, the Government

invoked its authority under Section 1226 (twice), not Section 1225(b)(2), to justify Andrés's arrest and detention.

Now, in response to Andrés's habeas petition, and for the first time in the record of this case, counsel for the Government asserts that Andrés is actually being detained under Section 1225(b)(2). *See* ECF No. 5 at 3–4. The Government is correct, of course, that it now possesses the authority to detain "unadmitted aliens already present inside the United States," like Andrés, under Section 1225(b)(2). *Avila*, 170 F.4th at 1136. But "whether the Government *possesses* that authority is an entirely different question from whether the Government *invoked* that authority" at the time of Andrés's arrest and detention. *Souleimane C. v. Blanche*, No. 26-cv-2215 (LMP/JFD), 2026 WL 1180075, at *3 (D. Minn. Apr. 30, 2026). As this Court has previously explained, "it is black-letter administrative law that 'courts may not accept . . . counsel's post hoc rationalizations for agency action,' and that 'an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'"[2] *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)) ("It is a 'foundational principle of administrative law' that judicial review of agency action is limited 'to the grounds that the agency invoked when it took the action.'").

---

[2]   As noted in *Souleimane C.*, "[a]lthough this principle is ordinarily applied in cases arising under the Administrative Procedure Act, courts have also applied this principle when reviewing agency action for due process violations under the Fifth Amendment." 2026 WL 1180075, at *3 n.3 (collecting cases).

DHS has consistently represented to Andrés that it is invoking its authority under Section 1226, not Section 1225(b)(2), in its dealings with Andrés, from its initial decision to release him on recognizance in May 2024 to his arrest and subsequent detention in July 2026. *See* ECF Nos. 6-2, 6-4, 6-6. Moreover, when DHS made its initial custody determination on July 6, 2026, it expressly and affirmatively offered Andrés "an opportunity to present [his] objections" to that determination to an immigration judge. *Mullane*, 339 U.S. at 314; *see* ECF No. 6-2 ("You may request a review of this custody determination by an immigration judge."). Andrés accepted that offer and "request[ed] an immigration judge review [his] custody determination." ECF No. 6-2. But the Government now argues that, notwithstanding its own offer just a few weeks ago, it need not honor Andrés's request. The Government relies on *Avila*—a decision issued four months before Andrés's arrest which holds, as a statutory matter, that the Government could have detained Andrés under Section 1225(b)(2). *See* 170 F.4th at 1136. The Government argues, in effect, that it did not have to affirmatively invoke its authority under Section 1226 to arrest and detain Andrés and did not have to offer him a bond hearing in the first place. *See* ECF No. 5 at 3–4; *see also Avila*, 170 F.4th at 1136–38.

The problem with the Government's argument is that the Government *did* invoke its authority under Section 1226 to arrest and detain Andrés, and it *did* offer him a bond hearing pursuant to that authority. ECF Nos. 6-2, 6-4. The Court therefore rejects the Government's assertion, "adopted post hoc and raised for the first time in this litigation," that it arrested and detained Andrés pursuant to Section 1225(b)(2). *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see Jose J.O.E. v. Bondi*, 797 F. Supp.

3d 957, 969–70 (D. Minn. 2025) (rejecting the argument that a petitioner "was detained under § 1225(b)" where the evidence in the record did not support that assertion but, instead, showed that the petitioner "was arrested on a warrant pursuant to § 1226" and "detained under authority of § 1226 and its implementing regulations"); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 782–83 (E.D. Mich. 2025) (same). The Court instead will "hold the Government to its representations that it has made" to Andrés, especially since it did not have to make those representations, and "find that he is detained pursuant to 8 U.S.C. § 1226(a)." *Souleimane C.*, 2026 WL 1180075, at *4; *see Jose J.O.E.*, 797 F. Supp. 3d at 969–70; *Lopez Benitez*, 795 F. Supp. 3d at 486; *Lopez-Campos*, 797 F. Supp. 3d at 782–83; *see also Motor Vehicle Mfrs.*, 463 U.S. at 50.

Noncitizens who are detained under Section 1226(a) are to "receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). But despite the Government offering Andrés the opportunity to challenge his initial custody determination—which, again, was made "[p]ursuant to the authority contained in section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act," ECF No. 6-2—there is no evidence in the record that Andrés has been afforded a bond redetermination hearing before an immigration judge. Depriving Andrés of a bond redetermination hearing, to which he plainly is entitled under Section 1226(a) and its implementing regulations, violates Andrés's right to due process.[3] *See Selvin*

---

[3]    The Government's argument relating to Andrés's due process claim focuses on its contention that Andrés is detained under Section 1225(b)(2). *See* ECF No. 5 at 4–13. That argument is unavailing based on the Government's numerous representations in the record

*Adonay E. M. v. Noem*, 817 F. Supp. 3d 720, 733–35 (D. Minn. 2025) (finding petitioner's due process rights were violated because he was denied a bond redetermination hearing despite being detained under Section 1226(a)); *Souleimane C.*, 2026 WL 1180075, at *4 (same).

The only remaining issue is the determination of an appropriate remedy. Andrés primarily requests immediate release from detention. *See* ECF No. 1 at 23–24. The Court has previously concluded, however, that when a petitioner who is detained under Section 1226(a) is improperly denied the opportunity for a bond hearing, the remedy is to order the Government to provide the petitioner with a bond redetermination hearing. *Souleimane C.*, 2026 WL 1180075, at *4 n.7. Accordingly, the Court orders the Government to provide Andrés a bond redetermination hearing before an immigration judge.

### CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.    Andrés Felipe C. C.'s Verified Petition for a Writ of Habeas Corpus (ECF No 1.) is **GRANTED** as follows:

    a.    The Court **DECLARES** that Andrés Felipe C. C. is currently detained pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2);

    b.    Consistent with 8 U.S.C. § 1226(a) and its implementing regulations, the Government is **ORDERED** to provide Andrés Felipe C. C. with a bond redetermination hearing on the merits of his request for release on bond by no later than **July 31, 2026**; and

---

of this case that Andrés was arrested and is detained under Section 1226(a). *See* ECF Nos. 6-2, 6-4; *see also* ECF No. 6-6.

c.    If the Government does not provide Andrés Felipe C. C. with a bond redetermination hearing as required by this Order, the Government is **ORDERED** to release Andrés Felipe C. C. from custody by no later than **August 1, 2026**.

2.    By no later than **5:00 p.m. on August 3, 2026**, the Government is **ORDERED** to file a status update apprising the Court of the results of any bond redetermination hearing conducted pursuant to this Order or, if no bond hearing was held, advising the Court as to the status of Andrés Felipe C. C.'s release from custody.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2026                    *s/Laura M. Provinzino*

                                              Laura M. Provinzino
United States District Judge